
**Below is an Opinion of the Court.**

_____
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re: | Bankruptcy Case No. 06-32879-elp7 |
| LAURA ROBIN LANE, | |
|             Debtor. | |
| RODOLFO A. CAMACHO, Trustee, | Adversary No. 06-3435 |
|             Plaintiff, | |
|     v. | MEMORANDUM OPINION |
| SHIRLEY LANE, | |
|             Defendant. | |

    In this chapter 7 bankruptcy case, the trustee filed this adversary proceeding to avoid a lien securing future advances made by debtor's mother to debtor prepetition, which she included in a trust deed that was recorded prepetition. The issue is whether compliance with Oregon's statute governing line of credit mortgages, ORS 86.155, is necessary in order to perfect a lien on real property

PAGE 1 - MEMORANDUM OPINION

for future advances. For the reasons that follow, I conclude that it is possible to perfect a lien securing future advances without complying with ORS 86.155, and that defendant did so in this case. Therefore, the trustee is not entitled to avoid defendant's interest in the proceeds from the sale of the property.

FACTS

The parties have stipulated to the facts. Debtor Laura Lane owned a condominium. On May 10, 2006, debtor borrowed $7,500 from her mother, who is the defendant in this case. Debtor granted a trust deed on the condominium to secure the loan. Both the promissory note evidencing the debt and the trust deed showed the amount of the debt as $7,500 "plus future advances." The trust deed was immediately recorded.

By the time debtor filed her chapter 7 petition in September 2006, defendant had advanced debtor an additional $21,500 pursuant to the May promissory note and trust deed.

The condominium was sold postpetition. The trustee seeks to avoid the lien on the property to the extent it secures the future advances, and to preserve that $21,500 for the estate. Defendant seeks payment of the $21,500 from the proceeds of the sale of the condominium, pursuant to her trust deed.

ISSUE

Whether perfection of a mortgage or trust deed securing future advances requires compliance with ORS 86.155.

DISCUSSION

The filing of a bankruptcy petition gives to the chapter 7

trustee "strong arm powers," including the power of a hypothetical bona fide purchaser (BFP) of real property of the debtor as of the commencement of the case. Bankruptcy Code § 544(a) allows the trustee to avoid any interests in real property that could be avoided by that hypothetical BFP. 11 U.S.C. § 544(a)(3).[1] "[S]tate law determines whether the trustee's status as a BFP will defeat the rights of the person against whom the trustee seeks to assert his powers." In re Weisman, 5 F.3d 417, 420 (9th Cir. 1993).

> As a hypothetical bona fide purchaser, the trustee under this section is deemed to have conducted a title search, paid value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case. . . . However, the trustee's right as a bona fide purchaser does not override state recording statutes and permit avoidance of any interest of which a trustee would have had constructive notice under state law. Thus, a trustee generally can avoid an unrecorded transfer of land, but not after having been put on constructive notice or inquiry of a prior claim.

5 Lawrence P. King, Collier on Bankruptcy ¶ 544.08 (15th ed. Rev. 2007)(footnotes omitted).

---

[1] That statute provides, as relevant here:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by --

. . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

PAGE 3 - MEMORANDUM OPINION

Under Oregon law, a good faith purchaser of real property for valuable consideration takes the property free of unrecorded interests in the property. ORS 93.640(1).[2]

The trust deed in this case was recorded prepetition. Therefore, the trustee as a hypothetical BFP takes subject to the liens of which the trust deed gives record notice.

The trust deed says that it secures the payment of $7,500 plus future advances. Oregon recognizes the validity of a mortgage given to secure future advances, even where the mortgage does not mention future advances. Hendrix v. Gore, 8 Or. 406, 409 (1880). The fact that such mortgages are valid does not answer the question of the priority of future advances mortgages as against subsequent BFPs or lienholders. Tyler v. Butcher, 84 Or. App. 656, 660-661 (1987) (validity of mortgage lien for future advances as between mortgagor and mortgagee does not determine priority of such a mortgage lien as to third parties).

At least until 1987, when the legislature enacted ORS 86.155,

---

[2] That statute provides, as relevant here:

(1) Every conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof affecting the title of real property within this state which is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof is first filed for record, and as against the heirs and assigns of such subsequent purchaser.

ORS 93.640(1).

PAGE 4 - MEMORANDUM OPINION

Oregon law provided that advances made under a recorded mortgage that states on its face that it secures future advances had priority over third parties who obtained an interest in the property after the advance was made. See Tyler v. Butcher, 84 Or. App. at 661-663; U.S. Nat. Bank of Portland v. Embody, 144 Or. 488, 502 (1933)("if the mortgagee is not obligated to make the advances, the mortgage lien attaches only to such advances as are made before notice of the junior encumbrance"); Don G. Carter, "New Line of Credit Mortgages and Their Use for Commercial Loans," 9 Oregon Real Estate and Land Use Digest 1 (December 1987)(obligatory advances retain priority of original advance; optional advances are subordinate to intervening liens of which the mortgagee has actual or constructive notice). See also George M. Platt, "The Uniform Land Security Interest Act: Vehicle for Reform of Oregon Secured Land Transaction Law," 69 Or. L. Rev. 847, 860-862 (1990). For advances made after the third party had obtained an interest in the property, the priority depended on whether the advances were obligatory or discretionary. U.S. Nat. Bank of Portland v. Embody, 144 Or. at 501-502; Platt, 69 Or. L. Rev. at 861.

Applying that law to this case, defendant's trust deed would have priority over the trustee, because the trust deed states that it secures future advances, thereby giving notice of defendant's interest with relation to future advances; it was recorded prepetition; and the advances were made prepetition, before the trustee gained the powers of a BFP who recorded his interest in the property.

PAGE 5 - MEMORANDUM OPINION

The trustee argues that the 1987 enactment of ORS 86.155 changed the rules with regard to mortgages or trust deeds securing future advances. He asserts that ORS 86.155 gives priority to mortgages or trust deeds for future advances only if the mortgage or trust deed meets the statutory requirements for a "line of credit instrument" as defined in ORS 86.155(1). Because the trust deed in this case does not meet those requirements and therefore is not a line of credit instrument as defined by the statute, he argues that the trust deed does not have priority over the trustee's powers as a BFP.

ORS 86.155(2) provides that "[a] line of credit instrument shall have priority, regardless of the knowledge of the lienholder of any intervening lien, as of its date of recording" as to either optional or obligatory advances of principal, for interest, payment of taxes and insurance and the like, and certain construction-related advances. A "line of credit instrument" is defined as "a mortgage or trust deed which secures a consumer or commercial credit agreement[3] and creates a lien on specified real property up to a stated amount, provided that the front page of the mortgage or trust deed" contains certain information, including stating that it is a line of credit instrument, stating a maximum principal amount to be advanced under the agreement, and stating a term or maturity date.

---

[3] "Credit agreement" is defined as "any promissory note, loan agreement or other agreement which provides for advances subsequent to the date of recording of the line of credit instrument which secures such note or agreement." ORS 86.155(1)(a).

PAGE 6 - MEMORANDUM OPINION

ORS 86.155(1)(b).[4]

The trustee's argument is that a mortgage or trust deed securing future advances will have priority over a subsequent purchaser or lienholder only if the mortgage or trust deed meets the statutory requirements for a "line of credit instrument." This argument is based on the premise that the legislature's granting of priority to line of credit instruments means that future advances instruments that do not meet the definition of line of credit instruments cannot have priority under any circumstances.

The Oregon Supreme Court has recognized that, when the legislature enacts a statute governing a particular area of the law, that does not necessarily mean that the statute was intended to govern all issues relating to that subject matter. See <u>Vollertsen v. Lamb</u>, 302 Or. 489, 509 (1987)(Residential Landlord Tenant Act does not govern all residential landlord/tenant disputes). The question, then, is one of statutory construction: Did the legislature intend compliance with ORS 86.155 to be the exclusive

---

[4] Specifically, the front page of the instrument must:

(A) Contain[] the legend "line of credit mortgage," "line of credit trust deed" or "line of credit instrument" either in capital letters or underscored above the body of the mortgage or trust deed;

(B) State[] the maximum principal amount to be advanced pursuant to the credit agreement; and

(C) State[] the term or maturity date, if any, of the credit agreement exclusive of any option to renew or extend such term of maturity date.

ORS 86.155(1)(b).

PAGE 7 - MEMORANDUM OPINION

way for a lender to perfect and thereby gain priority for a security interest securing future advances, or did it merely seek to provide a fool-proof, but non-exclusive method for guaranteeing priority?

In interpreting Oregon statutes, the court "is to discern the intent of the legislature." <u>Portland Gen. Elec. Co. v. Bureau of Labor and Indus.</u>, 317 Or. 606, 610 (1993). In doing that, a court must first look at the text of the statutory provision, which provides the best evidence of the legislature's intent. <u>Id.</u> Also considered at the first level of analysis is the context of the statutory provisions. <u>Id.</u> at 611. If the legislature's intent is clear from that inquiry, "further inquiry is unnecessary." <u>Id.</u> If, however, the statute is ambiguous, the court looks to legislative history. <u>Id.</u> at 612.[5] If, after considering text, context, and legislative history, the meaning of the statute is still not clear, "the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." <u>Id.</u>

Here, there is nothing in the text or context of ORS 86.155 to indicate whether the legislature considered compliance with this statute to be the exclusive method for assuring priority for future advances.

---

[5] It is not clear what effect, if any, the legislature's 2001 amendments to ORS 174.020, adding a provision that parties may offer legislative history to assist the court in construction of a statute, has on the Supreme Court's statutory construction methodology. <u>See</u> <u>State v. Rodriguez-Barrera</u>, 2007 WL 1491869 *2-4 (Or. App. May 23, 2007). In this case, it does not matter at which analytical level I consider the legislative history. Therefore, I need not decide the effect, if any, of the amended statute on the methodology set out in <u>Portland Gen. Elec. v. Bureau of Labor and Indus.</u>, 317 Or. 606 (1993).

PAGE 8 - MEMORANDUM OPINION

The second level of analysis is the legislative history. Neither party cites any legislative history. My own research did not reveal any clear indication of the legislature's intent on this subject.

House Bill 2300, which became ORS 86.155, was brought to the legislature by the Real Estate and Land Use Section of the Oregon State Bar. Testimony of Michael Magnus, May 19, 1987 hearing of the House Judiciary Committee Subcommittee 4 at tape counter 099. As originally introduced, it dealt primarily with disclosures in loan documents and with the drafters' desire to limit disclosure requirements to consumer loan transactions, as well as to "clarify those actions which can be taken with regard to a security interest (trust deed or mortgage) and the underlying debt without affecting the priority of the lien on the real property security." Written Testimony of Allen Brinkely, Exhibit E to April 23, 1987 hearing of the House Judiciary Committee at 2.

The line of credit provisions at issue in this case were added by amendment to that original bill. It appears that the impetus for the line of credit amendment was the change in federal tax law that phased out the tax deductions for interest paid on consumer debts, unless the interest was on debts secured by a residential mortgage. Platt, 69 Or. L. Rev. at 861-62; Carter, 9 <u>Oregon Real Estate and Land Use Digest</u> at 1; Testimony of Michael Magnus, May 19, 1987 hearing before the House Judiciary Committee Subcommittee 4 at tape counter 115-156; Staff Measure Analysis of HB 2300, Exhibit N to June 11, 1987 hearing before the Senate Business, Housing and

PAGE 9 - MEMORANDUM OPINION

Finance Committee. This tax law change resulted in much more home equity line of credit lending. But the law in Oregon was not clear about when the advances on lines of credit secured by real property would have priority over intervening lienholders.

House Bill 2300 was intended to provide some clarification, in particular to change substantive law by providing that all advances made under line of credit instruments that met the requirements of the statute would have priority, whether the advances were obligatory or discretionary. Testimony of Allen Brinkely, April 23, 1987 hearing before the House Judiciary Committee Subcommittee 4 at tape counter 280-314. Mr. Brinkely's written testimony explained the amendment:

> At this time a substantial number [of] financial institutions are offering what are called lines of credit secured by mortgage or trust deed. The consuming public has found these types of loans to be convenient and useful, leading to a substantial use of this service. Unfortunately, as with the subject of the existing bill (modifications), there is some concern that because existing Oregon cases have never had this type of security instrument to review before that there [may be] some confusion as to the validity or effect of this type of security instrument. It should be noted that it is generally felt that the courts would, if faced with the issue ultimately uphold the validity of the instrument. Therefore, the statute is a statement of existing law and a refinement of issues relating to notice and the mechanics of reducing the line of credit amount. There is one substantive change which is noted in the section by section review below.

Written testimony of Allen Brinkely, Exhibit E to April 23, 1987 hearing before the House Judiciary Committee at 3. The section-by-section analysis indicates that lines of credit are to include both obligatory and optional advances, and that "[t]he inclusion of optional advances *is* a modification of the existing law as

PAGE 10 - MEMORANDUM OPINION

interpreted by most Oregon lawyers." Id. (emphasis in original).

The bill also provided some consumer protection, by requiring specific information on the front page of the line of credit instrument, and providing that the borrower could reduce the maximum amount of a line of credit by giving notice to the lender.

The Staff Measure Analysis prepared for the House of Representatives reported that the purpose of HB 2300 was to "set forth what a line of credit mortgage must contain in order to maintain its priority position against subsequent mortgages," including stating that it is a line of credit mortgage, stating the maximum amount to be advanced, and the term of the credit agreement. Staff Measure Analysis of HB 2300, Exhibit N to June 11, 1987 hearing before the Senate Business, Housing and Finance Committee at 2.

I conclude that the legislative history does not shed any light on whether the legislature intended to displace Oregon law about priorities for future advances secured by mortgages or trust deeds, or to simply provide a fool-proof method for assuring priority for such advances, whether optional or obligatory. The fact that the legislature sought to provide more certainty and to assure priority for all advances made pursuant to line of credit instruments, whether obligatory or discretionary, does not tell us whether the legislature intended to eliminate other pre-existing methods.

That leads us to maxims of statutory construction. Neither party suggests any canon of construction that would assist in discerning legislative intent here. That leaves us with "the maxim

PAGE 11 - MEMORANDUM OPINION

that where no legislative history exists the court will attempt to determine how the legislature would have intended the statute be applied, had it considered the issue." Carlson v. Myers, 327 Or. 213, 225 (1998). Here, the legislature seemed concerned with providing certainty to lenders making line of credit loans. There is no indication that the legislature would have intended to preclude perfection of future advances security interests under the existing law, as uncertain as that might be in some circumstances.

In considering a similar issue under New York law, the bankruptcy court in New York provided a succinct analysis, which I find useful:

> [The statute] establishes an inclusive rather than an exclusive standard for lien perfection. Compliance with this statute is like hitting a home run in baseball. It assures a score, but there are other ways to be safe at home. The relevant text simply recites that a credit line mortgage "shall secure not only the original indebtedness but also the indebtedness created by future advances thereunder made within twenty years from the date of the recording . . . ." The language of this section, however, does not imply the negative. Nothing in the text establishes that advances before recordation are necessarily unsecured. Such pre-recording advances will not receive the benefit of [the state statute], but instead, their secured status will depend upon established case authority.

In re Brosnahan, 312 B.R. 220, 224 (Bankr. W.D.N.Y. 2004). Applying a similar approach here, I conclude that it is likely the Oregon legislature did not intend compliance with ORS 86.155 to be the exclusive method of assuring priority for future advances. Instead, it appears that, if the legislature had considered the issue, it would have intended merely to provide a method to assure certainty for those lenders who chose to comply with the statute (particularly institutional lenders), but not to deprive those who

PAGE 12 - MEMORANDUM OPINION

would have had priority under existing law from the benefit of that existing law.

This is the understanding of Oregon law held by the drafters of the Restatement (Third) of Property (Mortgages). In the list of state statutes relating to future advance clauses in mortgages, the footnote accompanying the Oregon statutory listing of ORS 86.155 says:

> Since the statute applies only if the mortgage is given a specific title, the parties may avoid the statute by omitting the relevant language. In the absence of statute, Oregon holds that a mortgage may secure future advances whether its wording so provides or not. However, if optional advances are made, they will have priority over intervening encumbrances only [under certain circumstances]. Tyler v. Butcher, 734 P.2d 1382 (Or.Ct.App.1987).

Restatement (Third) of Property (Mortgages) § 2.1, Statutory Note on Future Advances n.39 (1997).

The recorded trust deed in this case said that it secured not only $7,500, but also future advances. That recorded trust deed gave constructive notice to subsequent purchasers or lienholders that future advances were secured.[6] Even if it did not provide

---

[6] The trustee submitted Exhibit 4, which is a copy of a title report prepared on June 22, 2006. That report shows that defendant's trust deed secured an amount of $7,500 plus "any other obligations secured thereby[.]" The trustee argues that he should be able to rely on the title report and not have to review each document that is of record to see if there are additional obligations secured by the security instrument. Title reports are merely the title company's interpretation and summary of the real property records. Constructive notice includes "notice chargeable under the recording statute, ORS 93.710[.]" Gorzeman v. Thompson, 162 Or. App. 84, 93 (1999). ORS 93.710(1) provides, in part, that recordation of an instrument creating certain interests in real
(continued...)

PAGE 13 - MEMORANDUM OPINION

record notice of the amount of future advances secured by the trust deed, it certainly gave rise to inquiry notice. Such notice "arises when the existence of a claimed interest in real property may be determined through investigation based on facts available to the claimant that would cause a reasonable person to make such inquiry." Gorzeman v. Thompson, 162 Or. App. at 93 (priority not limited to face value of security instrument where amount on its face was so low as to trigger inquiry by reasonable person). Accord High v. Davis, 283 Or. 315, 333-334 (1978)(recorded instrument that was not properly acknowledged and did not clearly describe the property encumbered gave rise to duty to inquire to determine the extent of the interest claimed). A reasonable person in the trustee's position as a purchaser of the property would have questioned the future advances language in the trust deed and, because the advances had been made before debtor filed bankruptcy, the amount secured by the trust deed would have been discovered on inquiry.

This result is consistent with the purpose of the trustee's strong arm powers, which is to cut off unperfected security interests and other undisclosed prepetition claims, thereby furthering the goal of equalizing distribution of a debtor's assets

---

[6](...continued)
property "constitutes notice to third persons of the rights of the parties under the instrument[.]" Thus, it is the instrument that gives notice, not any title report summarizing what the record shows.

Because the trust deed in this case was recorded, it gave constructive notice that the trust deed secured both the original loan of $7,500 and the future advances.

PAGE 14 - MEMORANDUM OPINION

among unsecured creditors.  The trust deed here was recorded; it showed on its face that it secured future advances.  Therefore, defendant's interest in debtor's real property was not a secret, but could be discovered by looking in the property records and inquiring as to the amount, if any, of advances made prepetition under the future advances clause.

## CONCLUSION

The recorded trust deed secured the future advances made by defendant to debtor prepetition.  The trustee is not entitled to avoid the lien securing the future advances.  Therefore, defendant is entitled to judgment on the trustee's avoidance action.